**VIRGINIA:**

FILED
CIVIL INTAKE

**IN THE CIRCUIT COURT OF FAIRFAX COUNTY** MAR 23 · PM 2: 16

WEI SONG a/k/a VIVIAN SONG

    Plaintiff,

    v.

BIN HAO
13008 Cabin Creek Road
Herndon, Virginia 20171

and

QIDIAN LLC
7925 Jones Branch Drive, Suite 4350
Tysons Corner, Virginia 22102

    Defendants.

JOHN T. FREY
CLERK CIRCUIT COURT
FAIRFAX, VA

Case No: **2021  0437!**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

## COMPLAINT

Wei Song a/k/a Vivian Song ("**Ms. Song**"), by counsel, hereby files the following

Complaint against Defendants Bin Hao ("**Mr. Hao**") and Qidian LLC ("**Qidian**") and for her

causes of action, states as follows:

### JURISDICTION AND VENUE

1.    This Court has subject-matter jurisdiction pursuant to Virginia Code § 17.1-513.

2.    This Court has general personal jurisdiction over Defendant Bin Hao pursuant to

Va. Code § 8.01-328.1(A).

3.    This Court has general personal jurisdiction over Defendant Qidian LLC pursuant

to Va. Code § 8.01-328.1(A).

4.      Venue of this Court is proper pursuant to Va. Code § 8.01-262 as the matters set forth herein relate to Defendants' business activities in Fairfax County.

## THE PARTIES

5.      Plaintiff Ms. Song is a resident of the state of Massachusetts.  Prior to August 15, 2018, Ms. Song was a member of Qidian.

6.      Defendant Qidian is a Virginia limited liability company with its principal office located at 7925 Jones Branch Drive, Suite 4350, Tysons Corner, Virginia 22102.

7.      Defendant Mr. Hao is a resident of the Commonwealth of Virginia.  Mr. Hao is a member of Qidian and serves as the Company's President.

## STATEMENT OF FACTS

8.      Upon information and belief, Qidian was formed as a limited liability company in the Commonwealth of Virginia on or about January 9, 2015.

9.      On or about June 15, 2018, Ms. Song and Qidian entered into a Subscription Agreement, whereby Ms. Song became a member of Qidian and owned eight percent (8%) of the membership interests in Qidian (the "**Song Membership Interests**").

10.      On August 15, 2018, Ms. Song entered into a Membership Interest Redemption Agreement (the "**Purchase Agreement**") with Qidian to sell the Song Membership Interests back to Qidian.  Pursuant to the Purchase Agreement, Qidian promised to pay an aggregate purchase price of $400,000.00 (the "**Purchase Price**") to Ms. Song for the Song Membership Interests in the form of a Promissory Note (the "**Note**").

11.      In addition to the Purchase Price, Qidian also agreed to pay Ms. Song:

a)      certain interests totaling $106,033.00 (the "**Interests**"), plus interest at the rate of 10% from date due; and

b)      certain commission totaling $124,800.00 (the "**Commission**"), plus interest at the rate of 10% from August 15, 2018.

12.     On August 15, 2018, Ms. Song also entered into a Promissory Note (the "**Note**") with Qidian and Bin Hao. Pursuant to the Note, Qidian and Mr. Hao, as personal guarantor, promised to pay $400,000.00 (the "**Principal Amount**") to Ms. Song on or before November 1, 2018, together with eight percent (8%) interest during the initial term.  In the event of default, Qidian and Mr. Hao agreed to pay increased interest rates ranging from ten percent (10%) to sixteen percent (16%).

13.     On or about October 29, 2018, Qidian made a first payment for Interest under the Purchase Agreement totaling $31,008 to Ms. Song.

14.     On or about November 9, 2018, Qidian made a second payment for Interest under the Purchase Agreement totaling $15,345 to Ms. Song.

15.     On or about November 15, 2018, Qidian made a third payment for Interest under the Purchase Agreement totaling $20,000 to Ms. Song.

16.     On or about November 26, 201, Qidian made a fourth payment for Interest under the Purchase Agreement totaling $15,345 to Ms. Song.

17.     On or about November 27, 2018, Qidian made a fifth payment for Interest under the Purchase Agreement totaling $20,000 to Ms. Song.

18.     Ms. Song has made multiple attempts to recover the amounts owed to her under the Purchase Agreement.  To date, Qidian has failed to make any subsequent payments.

19.     Pursuant to the Purchase Agreement, Qidian owes Ms. Song the Principal Amount, remaining Interest, and Commissions totaling no less than $564,143.80.

20.     Ms. Song has made multiple attempts to recover the amounts owed to her under the Note.

21.     To date, Qidian and Mr. Hao have failed to make any payment on the Note. As a result, Qidian and Mr. Hao owe Ms. Song the Principal Amount and interest from August 15, 2018 totaling no less than $555,318.35, plus costs, attorneys' fees, and continuing interest.

22.     As of August 15, 2018, Ms. Song has been a creditor of Mr. Hao in an amount no less than $555,318.35, plus costs, attorneys' fees, and continuing interest.

23.     Upon information and belief, Mr. Hao sold his property located at 2783 Middleton Farm Court, Herndon, Virginia 20171 (the "**Property**") on November 10, 2020 for $999,999.00.

24.     Upon information and belief, Mr. Hao then transferred the proceeds from the sale of his Property to a Trust to remove the funds from potential collection and to hinder, delay, and/or defraud Ms. Song as a creditor.

### COUNT I: BREACH OF PURCHASE AGREEMENT
### (against Defendant Qidian only)

25.     The allegations contained in Paragraphs 1 through 24 above are incorporated by reference as if fully set forth herein.

26.     On or about August 15, 2018, Ms. Song and Qidian entered into a valid and enforceable Purchase Agreement.

27.     Pursuant to the Purchase Agreement, Qidian has certain obligations to pay Ms. Song the Principal Amount, Interests, and Commission owed, plus interest.

28. To date, Qidian has failed to pay all amounts owed to Ms. Song.

29. As a result of Qidian's breach of the Purchase Agreement, Ms. Song has been damaged in an amount no less than $564,143.80.

WHEREFORE, Wie Song hereby requests this Court enter judgment in favor of Wei Song and against Qidian LLC as follows:

(i) in the principal amount of $400,000 plus prejudgment interest at the statutory rate until paid in full;

(ii) in the principal amount of $4,901.50, plus interest at the rate of 10% from September 1, 2018 until paid in full;

(iii) in the principal amount of $427.41 for interest incurred from October 1, 2018 to November 15, 2018 on the second Interest installment;

(iv) in the principal amount of $332.07 for interest incurred from November 1, 2018 to November 27, 2018 on the third Interest installment;

(v) in the principal amount of $38,600.00 plus interest at the rate of 10% from August 15, 2018 until paid in full;

(vi) in the principal amount of $86,200.00 plus interest at the rate of 10% from August 15, 2018 until paid in full;

(vii) for any further relief this Court deems just and proper.

### COUNT II: BREACH OF PROMMISORRY NOTE
### (against Defendant Bin Hao only)

30. The allegations contained in Paragraphs 1 through 24 above are incorporated by reference as if fully set forth herein.

31. On or about August 15, 2018, Ms. Song and Qidian entered into a valid and enforceable Note, whereby Mr. Hao was a personal guarantor.

32.     Pursuant to the Note, Mr. Hao had certain obligations to pay Ms. Song the Principal Amount, plus interest as established under the Note.

33.     To date, Mr. Hao has failed to pay all amounts owed to Ms. Song.

34.     As a result of Mr. Hao's breach of the Note, Ms. Song has been damaged in an amount no less than $555,318.35.

WHEREFORE, Wie Song hereby requests this Court enter judgment in favor of Wei Song and against Bin Hao as follows:

(i) in the principal amount of $400,000;

(ii) interest owed in the amount of $6,663.01 from August 15, 2018 to November 1, 2018;

(iii) interest owed in the amount of $6,575.34 from November 1, 2018 to January 1, 2019;

(iv) interest at the rate of 16% from January 1, 2019 until paid in full;

(v) in all costs and attorney's fees incurred in bringing this action; and

(vi) for any further relief this Court deems just and proper.

## COUNT III- FRAUDULENT CONVEYANCE PURSUANT TO VA. CODE § 55.1-400
### (against Defendant Bin Hao only)

35.     The allegations contained in Paragraphs 1 through 24 above are incorporated by reference as if fully set forth herein.

36.     As of August 15, 2018, Ms. Song was a creditor of Bin Hao pursuant to the Note.

37.     Notwithstanding Mr. Hao's knowledge of the Note and Ms. Song's status as his creditor, Mr. Hao engaged in a transfer of the Property valued at $999,999.

38.     Mr. Hao's transfer of the Property resulted in profits for which Mr. Hao transferred to his personal Trust for inadequate or no consideration.

39.    Mr. Hao's transfer of the profits to his personal Trust was meant to hinder, delay, and/or defraud Mr. Hao's creditors, including Ms. Song.

40.    As a result of the fraudulent conveyance, Ms. Song has been damaged.

WHEREFORE, Plaintiff Wei Song hereby requests judgment in favor of Wei Song and against Bin Hao pursuant to Va. Code 55.1-400, plus prejudgment interest, attorney's fees and costs pursuant to *Prospect Development Co. v. Bershader*, 258 Va. 75 (1999). Wei Song further requests this Court enter a lien from the date of the filing of this action against all the estate, real and personal, of Bin Hao pursuant to Va. Code § 55.1-402.

## COUNT IV – VOLUNTARY CONVEYANCE PURSUANT TO VA. CODE § 55.1-401
### (In the alternative, against Defendant Bin Hao only)

41.    The allegations contained in Paragraphs 1 through 24 above are incorporated by reference as if fully set forth herein.

42.    As of August 15, 2018, Ms. Song was a creditor of Bin Hao pursuant to the Note.

43.    Notwithstanding Mr. Hao's knowledge of the Note and Ms. Song's status as his creditor, Mr. Hao engaged in a transfer of the Property valued at $999,999.

44.    Mr. Hao's transfer of the Property resulted in profits for which Mr. Hao transferred to his personal Trust for inadequate or no consideration.

45.    Mr. Hao's transfer of the profits to his personal Trust resulted in the insolvency of Mr. Hao.  More specifically, Mr. Hao is without adequate funds and/or assets to satisfy the amounts owed to Ms. Song pursuant to the Note and the anticipated judgment against Mr. Hao.

46.    Mr. Hao's transfer of the profits to his personal Trust was meant to hinder, delay, and/or defraud Mr. Hao's creditors, including Ms. Song.

47.    As a result of the improper conveyance, Ms. Song has been damaged.

WHEREFORE, Plaintiff Wei Song hereby requests judgment in favor of Wei Song and against Bin Hao pursuant to Va. Code 55.1-401, plus prejudgment interest, attorney's fees and costs pursuant to *Prospect Development Co. v. Bershader*, 258 Va. 75 (1999). Wei Song further requests this Court enter a lien from the date of the filing of this action against all the estate, real and personal, of Bin Hao pursuant to Va. Code § 55.1-402.

Respectfully submitted,

WEI SONG,
By Counsel

Bethany R. Benes, VSB No. 85408
BETHUNE BENES, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, VA 22030
Tel: (703) 260-9322
bbenes@bethunebenes.com
*Counsel for Wei Song a/k/a Vivian Song*

 美国启点投资

## QIDIAN LLC
## MEMBERSHIP INTEREST REDEMPTION AGREEMENT

THIS MEMBERSHIP INTEREST REDEMPTION AGREEMENT ("Agreement") is made and entered into as of August 15, 2018 ("Effective Date"), between Wei Song, a/k/a Vivian, an individual with an address at 801 W Boxborough Dr., Wilmington, DE 19810 ("Seller") and Qidian, LLC, a Virginia Limited Liability Company, with its principal place of business located at 7925 Jones Branch Drive Suite 4350, Tysons, VA 22102 ("Qidian"), each a "Party" and collectively the "Parties".

### WITNESSETH:

WHEREAS, Seller owns eight percent (8%) membership interests in Qidian ("Seller Membership Interests") pursuant to a Subscription Agreement, dated on June 15th, 2015, between Seller and Qidian ("Subscription Agreement"); and

WHEREAS, Seller desires to sell to Qidian, and Qidian desires to redeem and purchase from Seller, all of the Seller Membership Interests, upon the terms and conditions hereinafter set forth, and such Seller Membership Interests shall be deemed completely liquidated in connection therewith.

NOW, THEREFORE, in consideration of the premises, covenants, agreements, exhibits, terms and conditions herein contained and for other good and valuable consideration, the receipt and legal sufficiency of which are all hereby acknowledged, Qidian and Seller, intending to be legally bound, hereby agree as follows:

1. Redemption and Sale of the Seller Membership Interests.   At the Closing (as defined below), Seller shall sell, transfer and deliver to Qidian, and Qidian shall redeem and purchase from Seller, the Seller Membership Interests, upon and subject to the terms and conditions of this Agreement.

2. Purchase Price.   The aggregate purchase price ("Purchase Price") for the Seller Membership Interests is Four Hundred Thousand and 00/100 U.S. Dollars ($400,000.00), which shall be paid at Closing by Qidian to Seller, in the form of a promissory note (the "Note"). The Note shall be substantially in the same form as the attached Exhibit "A."

3. Closing; Deliveries.

The closing of the transaction contemplated herein (the "Closing") shall take place on August 15, 2018 or at such other time as the Parties may mutually agree. The Closing shall be held at such location as may be mutually agreed upon by the Parties and may be effected by electronic or other transmission of signature pages, as mutually agreed upon.

(a)   At Closing, Qidian shall deliver to Seller the following: a duly executed copy of the Note pursuant to Section 2 hereof;

(b)   At Closing, Seller shall deliver to Qidian the following: A duly executed bill of sale, substantially in the form of and to the effect of Exhibit "B" attached hereto (the "Bill of Sale"), reflecting Seller's sale and transfer of the Seller Membership Interest; and such other

**QIDIAN**                    美国启点投资

documents and instruments as Qidian may reasonably deem necessary relating to transactions contemplated by this Agreement.

4. <u>Representations and Warranties of Seller</u>.   Seller hereby represents and warrants to Qidian as follows:

(a)   Seller has good title to the Seller Membership Interests, free and clear of all liens, claims, and encumbrances, with full legal right and power to transfer and convey ownership of the Seller Membership Interests to Qidian.

(b)   Seller has full power, authority and legal right to enter into this Agreement and to consummate the transactions provided herein.

(c)   The execution and delivery of this Agreement and the consummation of the transactions contemplated by this Agreement by Seller do not and will not violate, conflict with or result in the breach of any material term, condition or provision of, or require the consent of any other person under (i) any existing law, ordinance, or governmental rule or regulation to which Seller is subject, (ii) any judgment, order, writ, injunction, decree or award of any court, arbitrator or governmental or regulatory official, body or authority which is applicable to Seller, or (iii) any instrument, document or agreement, oral or written, to which Seller is a party.

5.  <u>Representations and Warranties of Qidian</u>

(a)   Qidian is a limited liability company, which is duly organized, validly existing and in good standing under the laws of the Commonwealth of Virginia.   Qidian has full power and authority to carry on its business as now conducted.

(b)   Qidian has full power, authority and legal right to enter into this Agreement and to consummate the transactions provided for herein.   All actions on the part of Qidian necessary to approve the transactions contemplated by this Agreement have been duly taken.

6.  <u>Seller's Covenants</u>.   Seller hereby covenants and agrees that, immediately after the Closing:

(a)   Any and all of Seller's business ventures in China, under the name of "彼岸起点," including without limitation 启点盛迪信息咨询（北京）有限公司, a company registered under the laws of PRC, (collectively "<u>Seller Ventures</u>"), shall remain as a separate and independent business venture and shall have no affiliation whatsoever with Qidian; and

(b)   Seller, Seller Ventures and any of its or their agents, employees and representatives, or any of its or their successors, assigns and affiliates (collectively "<u>Seller Affiliates</u>"), shall not hold out as shareholders, members, representatives, managers, officers, agents, partners, or affiliates of Qidian, to the general public or any third party; and

(c)   Seller Affiliates shall not attempt to claim or assert any ownership rights in any Qidian mark, including without limitation "Qidian," "Qidian Capitals" and "启点" or any other variation or combination thereof (collectively "Qidian Mark(s)"), and shall not attempt to register any Qidian Mark as a trademark, trade name, domain name, or "doing business as" name, alone or in combination with Seller's own trademarks; and

## QIDIAN    美国启点投资

(d)    Seller Affiliates shall not sell any products or services, on behalf of Qidian, unless otherwise negotiated and agreed upon by the Parties in a separate Partnership or Representative agreement, in writing; and

(e)    Seller Affiliates acknowledge that, on about April 20, 2018, Qidian made a payment of $40,000 to Seller Affiliates, for the purpose of funding Qidian's business operation in Beijing, China. Except for the payment obligations set forth under Section 2, 7 and 8 of this Agreement, Seller Affiliates shall be solely and fully responsible for any and all of Seller Affiliates' operations and expenses. For the purpose of clarification, Qidian shall not be held responsible to provide any financial support, administrative assistance, or any other services to Seller Affiliates, unless otherwise negotiated and agreed upon by the Parties in a separate agreement, in writing.

7.  Accumulated Interests
In addition to the Purchase Price set forth under Section 2 of this Agreement, Qidian agrees to make the following installment payments, in a total amount of $106,033, to Seller, as accumulated interests of Seller's capital investment under the Subscription Agreement ( "Accumulated Interests"):

(a) The first installment payment of $35,344 due and payable on September 1st, 2018; and
(b) The second installment payment of $35,344 due and payable on October 1st, 2018; and
(c) The third installment payment of $35,345 due and payable on November 1st, 2018; and
(d) Any outstanding payment past due are subject to an interest rate of 10% per annum until paid in full.

8.  Commission
In addition to the Purchase Price set forth under Section 2 and the Accumulated Interests set forth under Section 7 of this Agreement, Qidian agrees to make certain commission payments, in a total amount of $124,800, to Seller ( "Commission"):

(a) The first Commission payment of $38,600 due and payable on December 1st, 2018 (with an interest rate of 10% per annum, accumulated from August 15, 2018) and;
(b) The second Commission payment (Qidian has not collected yet) of $86,200 due and payable upon exit of the Silver Valley project and Mr. Liang Huang's project, or on March 31st, 2019 (Due Date), whichever is earlier. Outstanding payments are subject to an interest rate of 10% per annum if not paid in full before the Due Date.

9.    Acknowledgements.    Qidian and Seller acknowledge and agree that the consideration for the Seller Membership Interests reflects the parties' arms-length agreement after full access to and disclosure of Qidian's business and financial records and future prospects.  Each of Qidian and Seller acknowledge that it has had the opportunity to consult legal counsel concerning this Agreement, that it has read and understands this Agreement, that it is fully aware of the legal effect of this Agreement, and that it has entered into this Agreement freely based on its own judgment.

10.    Further Actions.    Each of the parties hereto shall use reasonable efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary, proper or

QIDIAN                     美国启点投资

advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement.  Following the Closing, the parties shall each deliver or cause to be delivered at such times and places as shall be reasonably requested such additional instruments as the other party may reasonably request for the purpose of carrying out the transactions contemplated by this Agreement.

11. Assignment; Binding Effect.   No party may assign this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other parties. This Agreement shall be binding upon and inure to the benefit of the respective successors and permitted assigns of Seller and Qidian.

12.  Applicable Law, Arbitration, Venue.   This Agreement shall be governed by, interpreted under and construed and enforced in accordance with the laws of the Commonwealth of Virginia. Any dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by arbitration, conducted before one arbitrator in Fairfax County, Virginia, in accordance with the rules of the American Arbitration Association then in effect. Judgment may be entered on the arbitrator's award in any court having jurisdiction.

13.  Entire Agreement; Amendment.   This Agreement represents the entire agreement between the parties covering everything agreed upon or understood in this transaction and supersedes any prior understandings, agreements or representations, written or oral, relating to the subject matter hereof.   There are no oral promises, conditions, representations, understandings, interpretations or terms of any kind as conditions or inducements to the execution hereof or in effect between the parties, except as may otherwise be provided herein. This Agreement may be modified or amended only by a written instrument executed by both Parties hereto.

14.  Counterparts; Electronic Signatures.   This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same agreement, and it shall not be necessary in making proof of this Agreement or the terms of this Agreement to produce or account for more than one of such counterparts.   This Agreement may be signed and transmitted by facsimile machine or electronic mail and such faxed or electronically transmitted document and/or signature page shall be treated as an original document.

15.  Severability.   If any provision of this Agreement is held to be unenforceable, this Agreement shall be considered divisible and such provision shall be deemed inoperative to the extent it is deemed unenforceable, and in all other respects this Agreement shall remain in full force and effect; provided, however, that if any such provision may be made unenforceable by limitation thereof, then such provision shall be deemed to be so limited and shall be enforceable to the maximum extent permitted by applicable law.

16.  Waiver.   No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, this Membership Interest Redemption Agreement has been duly executed by each of the parties hereto as of the date first above written.

SELLER:

_____
WEI SONG, a/k/a Vivian

QIDIAN, LLC:

By: _____
Name: BIN HAO
Title: President

Exhibit A

<div align="center">**PROMISSORY NOTE**</div>

**$400,000.00**                                                    August 15, 2018

FOR **VALUE RECEIVED**, on August 15, 2018 (the "**Funding Date**"), the undersigned, **QIDIAN LLC**, a Virginia Limited Liability Company with an address of 7925 Jones Branch Drive Suite 4350, Tysons, VA 22102 (the "**Maker**") promises to pay to the order of **Wei Song**, an individual with an address at 801 W Boxborough Dr., Wilmington, DE 19810 (the "**Holder**"), the principal sum of up to **FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($400,000.00)** (the "**Principal Amount**"), in lawful money of the United States, with interest thereon from and including the date of this Note, but not including the date this Note is paid, calculated in the manner hereinafter set forth in this **Promissory Note** (the "**Note**").

**1. Term; Initial Interest Rate**

(a) The **initial term** (the "**Initial Term**") of this Note is **three months (3)** commencing on the **Funding Date** and expiring on **November 01, 2018** (the "**Maturity Date**"). During the Initial Term, the interest rate on the unpaid Principal Amount shall be at a rate per annum of **Eight Percent (8%)** (the "**Initial Interest Rate**"). Upon the expiration of the Term, the full unpaid Principal Amount, together with all accrued interest at the Initial Interest Rate, shall be immediately due and payable in full.

(b) Any unpaid Principal Amount together with the interest accrued and unpaid thereon computed at the **Initial Interest Rate** (or as otherwise set forth herein) shall be due and payable in full on the **Maturity Date**.

(c) Interest due on the Loan shall be paid in arrears, calculated based on a 360-day year and paid for the actual number of days elapsed for any whole or partial month in which interest is being calculated. In computing the number of days during which interest accrues, the **Funding Date** shall be included regardless of the time of day that the advance of Loan funds is made, and the day on which Loan funds are repaid shall be included.

**2. Option for Extension Term; Extension Term Interest Rate**

(a) **Maker** shall have one (1) option to extend the **Initial Term** of this Note for an additional term of **Two (2) Months** commencing immediately upon the expiration of the Initial Term, and ending exactly **Two (2) Months** thereafter (the "**Extension Term**"), upon satisfaction of the following terms and conditions:

**Maker's** option for the **Extension Term** may only be exercised by **Maker** sending written notice to **Holder** no later than thirty (30) days prior to the expiration of the **Initial Term** of this Note, **TIME BEING OF THE ESSENCE**, provided, however, that no event of default under this Note, including, but not limited to, nonpayment of interest, shall have occurred and remained uncured, at the time of **Maker's** written notice to exercise such option. If **Maker** properly exercises the option for the **Extension Term**, the same covenants, agreements, terms, provisions and conditions of this **Note** as are contained herein for the **Initial Term** shall apply, except that:

  i.   interest during the **Extension Term** shall be at **TEN Percent (10%)**
       per annum ("**Extension Interest Rate**");

  ii.  upon the expiration of the **Extension Term**, the full unpaid **Principal Amount**, together with all accrued interest at the **Extension Interest**

**Rate,** shall be immediately due and payable in full; and

iii. if Maker and Holder agree in writing, the extension term could be extended on a month-to-month basis.

### 3. Acceleration and Events of Default

The **Holder** may accelerate the entire unpaid **Principal Amount** and all accrued interest due under this **Note**, whereupon the unpaid **Principal Amount** of this **Note** together with interest and all other amounts payable hereunder and under the **Loan Documents** shall become immediately due and payable, upon the happening of any of the following events ("**Events of Default**"):

(a) failure to make any payment of interest to **Holder** or any other amount due under this **Note**, or any of the **Loan Documents**, on the date when due and the continuation of such failure for five (5) days thereafter, **Holder** being under no obligation to provide notice to **Maker** thereof; or

(b) failure to pay the full unpaid **Principal Amount**, all accrued interest, and any other amount due under this **Note** or the **Loan Documents**, due upon the **Maturity Date**; or

(c) default under any of the **Loan Documents**, including, without limitation, the **Pledge** and **Security Agreement** and this **Note**.

Notwithstanding the foregoing, **Holder** shall not be required to provide notice to **Maker** of its failure to make timely payment under Section 3(a) herein above, nor shall **Holder** be required to provide notice to **Maker** of the start or expiration of the five (5) **Day** period set forth in **Section 3(a)** herein above. Should any **Event of Default** occur, **Holder** may, but shall not be obligated to, provide notice to **Maker** of such **Event of Default**, and **Maker** may be provided with an opportunity to cure any such **Event of Default** only upon the absolute discretion of **Holder**. Upon the occurrence of an **Event of Default**, the interest rate upon the unpaid **Principal Amount** shall automatically become <u>**Sixteen Percent (16%)**</u> per annum ("**Default Interest Rate**"), and shall continue at the **Default Interest Rate** until full payment is made of the unpaid **Principal Amount** and all accrued interest.

### 4. No Prepayment Penalty

Maker shall have the right to prepay this Note in full or in part at any time without the imposition of any prepayment fee or penalty.

### 5. Legal Rate of Interest

Nothing herein contained shall be construed or so operate as to require payment of interest at a rate greater than the highest permitted rate under applicable law, or to make any payment or to do any act contrary to applicable law. To this end, if during the course of any litigation involving the enforceability of the obligations under this Note, a court having jurisdiction of the subject matter or of the parties to said litigation shall determine that either the interest rate as set forth herein, or the effect of said rate in relation to the particular circumstances of default resulting in said litigation, are separately or collectively usurious, then the interest rate set forth herein shall be reduced, or the operation and effect thereof ameliorated, to achieve the highest interest rate or charge which shall not be usurious.

### 6. Attorney's Fees.

In the event that any suit or action is instituted under or in relation to this **Note**, including without limitation to enforce any provision in this **Note**, the prevailing party in such dispute shall be entitled to recover from the losing party all fees, costs and expenses of enforcing any right of such prevailing party under or with respect to this **Note**, including without limitation, such reasonable fees and expenses of attorneys and accountants, which shall include, without limitation, all fees, costs and expenses of appeals.

### 7. Binding Nature; Assignment

This **Note** shall bind the **Maker** and its principals, receivers, administrators, successors and assigns, and shall inure to the benefit of the **Holder** and principals, receivers, administrators, successors and assigns. This **Note** and the obligations hereunder may not be assigned by the **Maker** without the prior written consent of the Holder. This **Note** and the entitlements hereunder may be assigned by the **Holder** without the consent of the **Maker**.

### 8. Waivers by Maker

**Maker** hereby waives demand, presentment for payment, notice of protest, and notice of dishonor or nonpayment of this **Note**.

### 9. Notice

Any claim, notice, request, instruction or demand required to be given or elected to be given, in connection with this **Note** shall be in writing and sent via personal delivery or overnight courier or via email with confirmation of receipt, to **Maker** or **Holder** at the addresses set forth in the first paragraph of this **Note**, or such other address to be designated in writing by **Maker** or **Holder**.

### 10. Jury Trial Waiver

**Maker** and **Holder** each hereby knowingly and voluntarily waive trial by jury and the right thereto in any action or proceeding of any kind, arising under or out of, or otherwise related to or connected with this Note.

### 11. Governing Law

This **Note** shall be governed by, interpreted under and construed and enforced in accordance with the laws of the **Commonwealth of Virginia**.

### 12. Complete and Voluntary Agreement

This Note constitutes the entire understanding of the parties on the subjects covered. **Maker** expressly acknowledges and warrants that he/she has read and fully understands the terms of this **Note**; that **Maker** has had the opportunity to seek legal counsel of his/her own choosing and to have the terms of this **Note** fully explained to him/her; that **Holder** has advised **Maker** to consult with an attorney prior to signing this **Note**; that **Maker** is not executing this **Note** in reliance on any promises, representations or inducements other than those contained herein; and that **Maker** is executing this **Note** voluntarily, free of any duress or coercion.

### 13. Miscellaneous

(a) To the extent a calculation must be made to determine the amount of any unpaid Principal Amount, payments made theretofore shall be deemed payments of interest first and payment of principal thereafter.

(b) **Maker** shall, upon **Holder's** written request, promptly make, execute and deliver to **Holder** any and all further documents or instruments **Holder** may consider necessary or desirable in order to effectuate, complete or perfect **Maker's** obligations under this **Note**.

(c) If any provision of this **Note** is held to be unenforceable for any reason, such provision shall be adjusted rather than voided, if possible, in order to achieve the intent of **Maker** and **Holder** to the fullest extent possible. In any event, all other provisions of this **Note** shall be deemed valid and enforceable to the fullest extent possible.

### 14. Personal Guarantee

Bin Hao ("**Guarantor**") hereby personally guarantees payment of the above **Promissory Note** dated on August 15, 2018, between **Wei Song** ("**Holder**") and **Qidian LLC** ("**Maker**"). **Guarantor** agrees that the Holder may proceed against Guarantor directly and independently of the borrower.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, **Maker** has signed this **Note** as of the **Funding Date** first set forth above.

Maker:
**QIDIAN**
**LLC**

By: _____

Name: **Bin Hao**

Title: **President & CEO**

COMMONWEALTH OF VIRGINIA

[CITY] [COUNTY] OF _Fairfax_ , to wit:

The following instrument was acknowledged before me by Bin Hao, on this __16th__ day of __August__ , 2018 .

_____
Notary Public

My commission expires: __March 31, 2020__
Notary Registration No.: __7666486__

ANA E. BARILLAS MENDOZA
NOTARY PUBLIC
REG. # 7666486
COMMONWEALTH OF VIRGINIA
MY COMMISION EXPIRES MARCH 31 2020

ANA E. BARILLAS MENDOZA
NOTARY PUBLIC
REG. # 7666486
COMMONWEALTH OF VIRGINA
MY COMMISION EXPIRES MARCH 31 2020

4

Exhibit B

## BILL OF SALE

BE IT KNOWN TO ALL BY THESE PRESENTS that Wei Song, an individual, ("Seller"), pursuant to that certain Membership Interest Redemption Agreement between Seller and Qidian, LLC, a Virginia Limited Liability Company ("Qidian"), dated August 15, 2018 (the "Agreement"), and for good and valuable consideration, the receipt, adequacy, and legal sufficiency of which is hereby acknowledged, does hereby sell, transfer, assign and deliver to Buyer, its successors and assigns, to have and to hold forever, all of Seller's right, title and interest in and to the membership interest of Buyer to Qidian, in the manner and to the extent provided in the Agreement. Unless otherwise defined in this Bill of Sale, capitalized terms used in this Bill of Sale shall have the respective meanings ascribed to such terms in the Agreement.

Neither the making nor the acceptance of this Bill of Sale shall restrict, impair, reduce, expand or otherwise modify the terms of the Agreement or constitute a waiver or release by Seller or Buyer of any liabilities, duties or obligations imposed upon any of them by the terms of the Agreement including, without limitation, the representations and warranties and other provisions thereof. The covenants, representations and warranties of Seller and Buyer set forth in the Agreement will be incorporated in and survive the execution and delivery of this Bill of Sale.

This Bill of Sale is binding on Seller, and its successors and assigns, and will inure to the benefit of Buyer, its successors and assigns, and shall be construed and enforced in accordance with the laws of the Commonwealth of Virginia without regard to the conflict or choice of law rules of Virginia or any other jurisdiction.

Subject to the terms and conditions set forth in the Agreement, Seller agrees to use all reasonable efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary and proper and advisable to consummate and make effective the transactions contemplated by this Bill of Sale.

This Bill of Sale cannot be amended without a writing signed by each of Buyer and Seller.

IN WITNESS WHEREOF, Seller has executed this Bill of Sale as of this 15th day of August 2018.

_____
WEI SONG
a/k/a Vivian

VIRGINIA

THE FAIRFAX COUNTY CIRCUIT COURT

|  |  |  |
|---|---|---|
| WEI SONG | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action 2021-4375 |
| | ) | |
| BIN HAO, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **MOTION TO DISMISS**

As their Motion Dismiss, Qidian, LLC and Bin Hao, pursuant to Va. Code § 8.01-5, state

as follows:

1.      Plaintiff filed her Complaint alleging that Defendant Qidian is indebted to her

based upon Qidian having executed a purchase agreement and a promissory note.  *See* Complaint

at ¶¶ 10 and 25-29.

2.      Plaintiff also alleges that Defendant Hao is indebted to her based upon Hao

having executed a promissory note.  *Id.* at ¶ 12 30-34.

3.      Incident to her claims for damages resulting from an alleged breach of the

obligations owed by Defendant Hao under the promissory note he executed, Plaintiff claims that

Defendant Hao made a fraudulent conveyance [*Id.* at ¶¶ 35-39] and that Defendant Hao made a

voluntary convenance.  *Id.* at ¶¶ 41-47.

4.      None of the discrete transactions refenced in the Complaint – neither the

purported agreement for Qidian to purchase Plaintiff's membership interests, nor the obligation

of Qidian to pay plaintiff pursuant to any promissory note (on the one hand), nor the obligation

[1]

of Hao to pay Plaintiff pursuant to a different promissory note (on the other) bear any

relationship to the other alleged transaction.

5.    To the extend there are any obligations owned by Qidian and to the extent that

there are any obligations owed by Hao to Plaintiff, the fact that these obligations are owned to

the same creditor is not a basis to joining these disparate claims within this civil action.  In fact,

even if there two claims were pursued independently of one another, there would not be a

sufficient basis to order a joint trial of these claims, as the simple fact that the same person

claims to be owed money by two different persons is not a sufficient basis to consolidate the

separate claims.

6.    The joinder of the claims against Qidian with the claims against Hao is a

misjoinder.

7.    Va. Code § 8.01-5(A), provides (in pertinent part):

Whenever such . . . misjoinder shall be made to appear by affidavit or
otherwise, . . . parties misjoined may be dropped by order of the court at
any time as the ends of just may require.

8.    Therefore, Hao must be dropped as a party Defendant.


Wherefore, Defendants requests that this Court enter an order dismissing Bin Hoa as a

party Defendant to this civil action.

Respectfully submitted,
BIN HAO and
QIDIAN, LLC
By counsel

ALLRED, BACON, HALFHILL & YOUNG, P.C.

By: _____

James T. Bacon (VSB#22146)
11350 Random Hills Road
Suite 700
Fairfax, Virginia 22030
(703) 352-1300
(703) 352-1301
jbacon@abhylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May, 2021, a true copy of the foregoing was sent,

via Federal Express to:

Bethany R. Benes, Esq.
BETHUNE BENES, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, Virginia 22030
*Counsel for Wei Song a/k/a Vivian Song*

_____
James T. Bacon

[3]

VIRGINIA

THE FAIRFAX COUNTY CIRCUIT COURT

| | | |
|---|---|---|
| WEI SONG | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action 2021-4375 |
| | ) | |
| BIN HAO, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

### SECOND PLEA IN BAR OF BIN HAO

As his second Plea in Bar, Bin Hao states that the Complaint fails to state a cause of action against him and should be dismissed with prejudice for the following reasons:

1. The Complaint alleges that Bin Hao is liable to Plaintiff based upon a Promissory Note (the "Note").

2. The Note has been incorporated into the Complaint through the Agreed Order entered by the Court on April 29, 2021 (the "Order") and is attached to the Order. A copy of the Agreed Order and its attached exhibits is attached to this demurrer as Exhibit 1.

3. The make of the Note is Qidian, LLC. Bin Hao is not a maker of the Note. The Signature of Bin Hao, in his individual capacity, does not appear on the Note.

4. Va. Code § 8.3A-401(a) provides, in pertinent part, that a person is not liable on an instrument unless the person signed the instrument.

5. The signature of Bin Hao as the representative of Qidian, LLC does not impose liability upon Bin Hao as set forth in Va. Code § 8.3A-402(b)(1).

6. To the extent that Plaintiff may claim that Bin Hao is a guarantor of the obligations of the maker of the Note, then such relief is barred by the Statute of Frauds as set

[1]

forth in Va. Code § 11-2(4). *Allessandrini v. Mullins*, 178 Va. 69, 72-73 (1941).

7.    Additionally, even if this claim is not governed by the Statute of Frauds, there is

no consideration for the alleged promise of Bin Hao; therefore, the claim fails. *Mid Atlantic*

*Appliances v. Morgan*, 194 Va. 324, 327 (1952).

Wherefore, Bin Hao respectfully requests that this Court enter an order sustaining this

Plea in Bar and dismissing the Complaint against him with prejudice.

Respectfully submitted,
BIN HAO
By counsel

ALLRED, BACON, HALFHILL & YOUNG, P.C.

By: _____
James T. Bacon (VSB#22146)
11350 Random Hills Road
Suite 700
Fairfax, Virginia 22030
(703) 352-1300
(703) 352-1301
jbacon@abhylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September, 2021, a true copy of the foregoing

was sent, via email and Federal Express to:

William J. Bethune, VSB No. 21427
Bethany R. Benes, VSB No. 85408
BETHUNE BENES, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, VA 22030
Tel: (703) 260-9322
wbethune@bethunebenes.com
bbenes@bethunebenes.com
*Counsel for Wei Song a/k/a Vivian Song*

_____
James T. Bacon

[2]

VIRGINIA:

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

WEI SONG a/k/a VIVIAN SONG        :

     Plaintiff,                :

                                   :

v.                               :       Case No. CL-2021-4375

                                   :

BIN HAO, *et al.*                :

                                   :

     Defendants.             :

### AGREED ORDER

THIS MATTER came upon the Motion Craving *Oyer* (the "**Motion**") filed by Defendants

Bin Hao and Qidian LLC to the Complaint filed by Plaintiff Wei Song;

IT APPEARING TO THE COURT, from the signatures of respective counsel below, that

Plaintiff agrees to attach the documents (identified below) referenced in Paragraphs 10 and 12 of the

Complaint, and that it is otherwise proper to do so;

IT FURTHER APPEARING TO THE COURT, based upon the endorsement of Counsel for

Plaintiff, that the promissory note referenced in Paragraph 10 of the Complaint is the same

instrument referenced in Paragraph 12 of the Complaint;

IT IS HEREBY ORDERED that the following documents, attached to this Agreed Order,

shall be deemed attached as to Plaintiff's Complaint as set forth below:

    • Exhibit A: Membership Interest Redemption Agreement

    • Exhibit B: Promissory Note;

IT IS HEREBY FURTHER ORDERED that this Agreed Order resolves Defendant's Motion

Craving *Oyer* and Defendants shall file their responsive pleadings to the Complaint on or before May

10, 2021.

AND THIS CASE CONTINUES.

1



ENTERED THIS 29ᵗʰ DAY OF APRIL 2021.

_____
Circuit Court Judge

**Brett A. Kassabian**

WE ASK FOR THIS:

_____
Bethany R. Benes (VSB No. 85408)
BETHUNE BENES, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, VA 22030
Tel: (703) 260-9322
bbenes@bethunebenes.com
*Counsel for Wei Song a/k/a Vivian Song*

SEEN AND AGREED:

_____
James X. Bacon, Esq. (VSB No. 22146)
ALLRED, BACON, HALFHILL & YOUNG, P.C.
11350 Random Hills Road, Suite 700
Fairfax, Virginia 22030
Tel.: (703) 352-1300
Facsimile: (703) 352-1301
jbacon@abhylaw.com
*Counsel for Defendants Bin Hao and Qidian LLC*

2

 美国启点投资

### QIDIAN LLC
### MEMBERSHIP INTEREST REDEMPTION AGREEMENT

THIS MEMBERSHIP INTEREST REDEMPTION AGREEMENT ("Agreement") is made and entered into as of August 15, 2018 ("Effective Date"), between Wei Song, a/k/a Vivian, an individual with an address at 801 W Boxborough Dr., Wilmington, DE 19810 ("Seller") and Qidian, a Virginia Limited Liability Company, with its principal place of business located at 7925 Jones Branch Drive Suite 4350, Tysons, VA 22102 ("Qidian"), each a "Party" and collectively the "Parties".

#### WITNESSETH:

WHEREAS, Seller owns eight percent (8%) membership interests in Qidian ("Seller Membership Interests") pursuant to a Subscription Agreement, dated on June 15th, 2015, between Seller and Qidian ("Subscription Agreement"); and

WHEREAS, Seller desires to sell to Qidian, and Qidian desires to redeem and purchase from Seller, all of the Seller Membership Interests, upon the terms and conditions hereinafter set forth, and such Seller Membership Interests shall be deemed completely liquidated in connection therewith.

NOW, THEREFORE, in consideration of the premises, covenants, agreements, exhibits, terms and conditions herein contained and for other good and valuable consideration, the receipt and legal sufficiency of which are all hereby acknowledged, Qidian and Seller, intending to be legally bound, hereby agree as follows:

1. <u>Redemption and Sale of the Seller Membership Interests.</u>  At the Closing (as defined below), Seller shall sell, transfer and deliver to Qidian, and Qidian shall redeem and purchase from Seller, the Seller Membership Interests, upon and subject to the terms and conditions of this Agreement.

2. <u>Purchase Price.</u>   The aggregate purchase price ("Purchase Price") for the Seller Membership Interests is Four Hundred Thousand and 00/100 U.S. Dollars ($400,000.00), which shall be paid at Closing by Qidian to Seller, in the form of a promissory note (the "Note"). The Note shall be substantially in the same form as the attached Exhibit "A."

3. <u>Closing; Deliveries.</u>

The closing of the transaction contemplated herein (the "Closing") shall take place on August 15, 2018 or at such other time as the Parties may mutually agree. The Closing shall be held at such location as may be mutually agreed upon by the Parties and may be effected by electronic or other transmission of signature pages, as mutually agreed upon.

(a)   At Closing, Qidian shall deliver to Seller the following: a duly executed copy of the Note pursuant to Section 2 hereof;

(b)   At Closing, Seller shall deliver to Qidian the following: A duly executed bill of sale, substantially in the form of and to the effect of Exhibit "B" attached hereto (the "Bill of Sale"), reflecting Seller's sale and transfer of the Seller Membership Interest; and such other

**EXHIBIT**
A



美国启点投资

documents and instruments as Qidian may reasonably deem necessary relating to transactions contemplated by this Agreement.

4.Representations and Warranties of Seller.   Seller hereby represents and warrants to Qidian as follows:

(a)   Seller has good title to the Seller Membership Interests, free and clear of all liens, claims, and encumbrances, with full legal right and power to transfer and convey ownership of the Seller Membership Interests to Qidian.

(b)   Seller has full power, authority and legal right to enter into this Agreement and to consummate the transactions provided herein.

(c)   The execution and delivery of this Agreement and the consummation of the transactions contemplated by this Agreement by Seller do not and will not violate, conflict with or result in the breach of any material term, condition or provision of, or require the consent of any other person under (i) any existing law, ordinance, or governmental rule or regulation to which Seller is subject, (ii) any judgment, order, writ, injunction, decree or award of any court, arbitrator or governmental or regulatory official, body or authority which is applicable to Seller, or (iii) any instrument, document or agreement, oral or written, to which Seller is a party.

5.   Representations and Warranties of Qidian

(a)   Qidian is a limited liability company, which is duly organized, validly existing and in good standing under the laws of the Commonwealth of Virginia.  Qidian has full power and authority to carry on its business as now conducted.

(b)   Qidian has full power, authority and legal right to enter into this Agreement and to consummate the transactions provided for herein.  All actions on the part of Qidian necessary to approve the transactions contemplated by this Agreement have been duly taken.

6.   Seller's Covenants.   Seller hereby covenants and agrees that, immediately after the Closing:

(a)   Any and all of Seller's business ventures in China, under the name of "彼岸起点," including without limitation 启点盛迪信息咨询 (北京) 有限公司, a company registered under the laws of PRC, (collectively "Seller Ventures"), shall remain as a separate and independent business venture and shall have no affiliation whatsoever with Qidian; and

(b)   Seller, Seller Ventures and any of its or their agents, employees and representatives, or any of its or their successors, assigns and affiliates (collectively "Seller Affiliates"), shall not hold out as shareholders, members, representatives, managers, officers, agents, partners, or affiliates of Qidian, to the general public or any third party; and

(c)   Seller Affiliates shall not attempt to claim or assert any ownership rights in any Qidian mark, including without limitation "Qidian," "Qidian Capitals" and "启点" or any other variation or combination thereof (collectively "Qidian Mark(s)"), and shall not attempt to register any Qidian Mark as a trademark, trade name, domain name, or "doing business as" name, alone or in combination with Seller's own trademarks; and

 美国启点投资

(d)   Seller Affiliates shall not sell any products or services, on behalf of Qidian, unless otherwise negotiated and agreed upon by the Parties in a separate Partnership or Representative agreement, in writing; and

(e)   Seller Affiliates acknowledge that, on about April 20, 2018, Qidian made a payment of $40,000 to Seller Affiliates, for the purpose of funding Qidian's business operation in Beijing, China. Except for the payment obligations set forth under Section 2, 7 and 8 of this Agreement, Seller Affiliates shall be solely and fully responsible for any and all of Seller Affiliates' operations and expenses. For the purpose of clarification, Qidian shall not be held responsible to provide any financial support, administrative assistance, or any other services to Seller Affiliates, unless otherwise negotiated and agreed upon by the Parties in a separate agreement, in writing.

7. Accumulated Interests
In addition to the Purchase Price set forth under Section 2 of this Agreement, Qidian agrees to make the following installment payments, in a total amount of $106,033, to Seller, as accumulated interests of Seller's capital investment under the Subscription Agreement ( "Accumulated Interests"):

(a) The first installment payment of $35,344 due and payable on September 1st, 2018; and

(b) The second installment payment of $35,344 due and payable on October 1st, 2018; and

(c) The third installment payment of $35,345 due and payable on November 1st, 2018; and

(d) Any outstanding payment past due are subject to an interest rate of 10% per annum until paid in full.

8. Commission
In addition to the Purchase Price set forth under Section 2 and the Accumulated Interests set forth under Section 7 of this Agreement, Qidian agrees to make certain commission payments, in a total amount of $124,800, to Seller ( "Commission"):

(a) The first Commission payment of $38,600 due and payable on December 1st, 2018 (with an interest rate of 10% per annum, accumulated from August 15, 2018) and;

(b) The second Commission payment (Qidian has not collected yet) of $86,200 due and payable upon exit of the Silver Valley project and Mr. Liang Huang's project, or on March 31st, 2019 (Due Date), whichever is earlier. Outstanding payments are subject to an interest rate of 10% per annum if not paid in full before the Due Date.

9.   Acknowledgements.   Qidian and Seller acknowledge and agree that the consideration for the Seller Membership Interests reflects the parties' arms-length agreement after full access to and disclosure of Qidian's business and financial records and future prospects.   Each of Qidian and Seller acknowledge that it has had the opportunity to consult legal counsel concerning this Agreement, that it has read and understands this Agreement, that it is fully aware of the legal effect of this Agreement, and that it has entered into this Agreement freely based on its own judgment.

10.   Further Actions.   Each of the parties hereto shall use reasonable efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary, proper or



美国启点投资

advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement.  Following the Closing, the parties shall each deliver or cause to be delivered at such times and places as shall be reasonably requested such additional instruments as the other party may reasonably request for the purpose of carrying out the transactions contemplated by this Agreement.

11. Assignment; Binding Effect.  No party may assign this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other parties. This Agreement shall be binding upon and inure to the benefit of the respective successors and permitted assigns of Seller and Qidian.

12.  Applicable Law; Arbitration; Venue.  This Agreement shall be governed by, interpreted under and construed and enforced in accordance with the laws of the Commonwealth of Virginia. Any dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by arbitration, conducted before one arbitrator in Fairfax County, Virginia, in accordance with the rules of the American Arbitration Association then in effect. Judgment may be entered on the arbitrator's award in any court having jurisdiction.

13. Entire Agreement; Amendment.  This Agreement represents the entire agreement between the parties covering everything agreed upon or understood in this transaction and supersedes any prior understandings, agreements or representations, written or oral, relating to the subject matter hereof.  There are no oral promises, conditions, representations, understandings, interpretations or terms of any kind as conditions or inducements to the execution hereof or in effect between the parties, except as may otherwise be provided herein. This Agreement may be modified or amended only by a written instrument executed by both Parties hereto.

14.  Counterparts; Electronic Signatures.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same agreement, and it shall not be necessary in making proof of this Agreement or the terms of this Agreement to produce or account for more than one of such counterparts.  This Agreement may be signed and transmitted by facsimile machine or electronic mail and such faxed or electronically transmitted document and/or signature page shall be treated as an original document.

15.  Severability.  If any provision of this Agreement is held to be unenforceable, this Agreement shall be considered divisible and such provision shall be deemed inoperative to the extent it is deemed unenforceable, and in all other respects this Agreement shall remain in full force and effect; provided, however, that if any such provision may be made unenforceable by limitation thereof, then such provision shall be deemed to be so limited and shall be enforceable to the maximum extent permitted by applicable law.

16.  Waiver.  No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

*[Signature Pages Follow]*



Exhibit A

## PROMISSORY NOTE

$400,000.00          August 15, 2018

FOR VALUE RECEIVED, on August 15, 2018 (the "**Funding Date**"), the undersigned, **QIDIAN LLC**, a Virginia Limited Liability Company with an address of 7925 Jones Branch Drive Suite 4350, Tysons, VA 22102 (the "**Maker**") promises to pay to the order of Wei Song, an individual with an address at 801 W Boxborough Dr., Wilmington, DE 19810 (the "**Holder**"), the principal sum of up to **FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($400,000.00)** (the "**Principal Amount**"); in lawful money of the United States, with interest thereon from and including the date of this Note, but not including the date this Note is paid, calculated in the manner hereinafter set forth in this **Promissory Note** (the "**Note**").

1. **Term; Initial Interest Rate**

   (a) The initial term (the "**Initial Term**") of this Note is three months (3) commencing on the Funding Date and expiring on November 01, 2018 (the "**Maturity Date**"). During the Initial Term, the interest rate on the unpaid Principal Amount shall be at a rate per annum of **Eight Percent (8%)** (the "**Initial Interest Rate**"). Upon the expiration of the Term, the full unpaid Principal Amount, together with all accrued interest at the Initial Interest Rate, shall be immediately due and payable in full.

   (b) Any unpaid Principal Amount together with the interest accrued and unpaid thereon computed at the **Initial Interest Rate** (or as otherwise set forth herein) shall be due and payable in full on the **Maturity Date**.

   (c) Interest due on the Loan shall be paid in arrears, calculated based on a 360-day year and paid for the actual number of days elapsed for any whole or partial month in which interest is being calculated. In computing the number of days during which interest accrues, the Funding Date shall be included regardless of the time of day that the advance of Loan funds is made, and the day on which Loan funds are repaid shall be included.

2. **Option for Extension Term; Extension Term Interest Rate**

   (a) Maker shall have one (1) option to extend the Initial Term of this Note for an additional term of Two (2) Months commencing immediately upon the expiration of the Initial Term, and ending exactly Two (2) Months thereafter (the "**Extension Term**"), upon satisfaction of the following terms and conditions:

   Maker's option for the Extension Term may only be exercised by Maker sending written notice to Holder no later than thirty (30) days prior to the expiration of the Initial Term of this Note, **TIME BEING OF THE ESSENCE**, provided, however, that no event of default under this Note, including, but not limited to, nonpayment of interest, shall have occurred and remained uncured, at the time of Maker's written notice to exercise such option. If Maker properly exercises the option for the Extension Term, the same covenants, agreements, terms, provisions and conditions of this Note as are contained herein for the **Initial Term** shall apply, except that:

        i.   interest during the Extension Term shall be at **TEN Percent (10%)** per annum ("**Extension Interest Rate**");

        ii.   upon the expiration of the Extension Term, the full unpaid **Principal Amount**, together with all accrued interest at the **Extension Interest**

1

**Rate**, shall be immediately due and payable in full; and

    iii.   if Maker and Holder agree in writing, the extension term could be extended on a month-to-month basis.

### 3. Acceleration and Events of Default

The **Holder** may accelerate the entire unpaid **Principal Amount** and all accrued interest due under this **Note**, whereupon the unpaid **Principal Amount** of this **Note** together with interest and all other amounts payable hereunder and under the **Loan Documents** shall become immediately due and payable, upon the happening of any of the following events ("**Events of Default**"):

(a) failure to make any payment of interest to **Holder** or any other amount due under this **Note**, or any of the **Loan Documents**, on the date when due and the continuation of such failure for five (5) days thereafter, **Holder** being under no obligation to provide notice to **Maker** thereof; or

(b) failure to pay the full unpaid **Principal Amount**, all accrued interest, and any other amount due under this **Note** or the **Loan Documents**, due upon the **Maturity Date**; or

(c) default under any of the **Loan Documents**, including, without limitation, the **Pledge and Security Agreement** and this **Note**.

Notwithstanding the foregoing, **Holder** shall not be required to provide notice to **Maker** of its failure to make timely payment under Section 3(a) herein above, nor shall **Holder** be required to provide notice to **Maker** of the start or expiration of the five (5) Day period set forth in Section 3(a) herein above. Should any **Event of Default** occur, **Holder** may, but shall not be obligated to, provide notice to **Maker** of such **Event of Default**, and **Maker** may be provided with an opportunity to cure any such **Event of Default** only upon the absolute discretion of **Holder**. Upon the occurrence of an **Event of Default**, the interest rate upon the unpaid **Principal Amount** shall automatically become **Sixteen Percent (16%)** per annum ("**Default Interest Rate**"), and shall continue at the **Default Interest Rate** until full payment is made of the unpaid **Principal Amount** and all accrued interest.

### 4. No Prepayment Penalty

**Maker** shall have the right to prepay this **Note** in full or in part at any time without the imposition of any prepayment fee or penalty.

### 5. Legal Rate of Interest

Nothing herein contained shall be construed or so operate as to require payment of interest at a rate greater than the highest permitted rate under applicable law, or to make any payment or to do any act contrary to applicable law. To this end, if during the course of any litigation involving the enforceability of the obligations under this **Note**, a court having jurisdiction of the subject matter or of the parties to said litigation shall determine that either the interest rate as set forth herein, or the effect of said rate in relation to the particular circumstances of default resulting in said litigation, are separately or collectively usurious, then the interest rate set forth herein shall be reduced, or the operation and effect thereof ameliorated, to achieve the highest interest rate or charge which shall not be usurious.

### 6. Attorney's Fees.

In the event that any suit or action is instituted under or in relation to this **Note**, including without limitation to enforce any provision in this **Note**, the prevailing party in such dispute shall be entitled to recover from the losing party all fees, costs and expenses of enforcing any right of such prevailing party under or with respect to this **Note**, including without limitation, such reasonable fees and expenses of attorneys and accountants, which shall include, without limitation, all fees, costs and expenses of appeals.

### 7. Binding Nature; Assignment

This Note shall bind the Maker and its principals, receivers, administrators, successors and assigns, and shall inure to the benefit of the Holder and principals, receivers, administrators, successors and assigns. This Note and the obligations hereunder may not be assigned by the Maker without the prior written consent of the Holder. This Note and the entitlements hereunder may be assigned by the Holder without the consent of the Maker.

### 8. Waivers by Maker

Maker hereby waives demand, presentment for payment, notice of protest, and notice of dishonor or nonpayment of this Note.

### 9. Notice

Any claim, notice, request, instruction or demand required to be given or elected to be given, in connection with this Note shall be in writing and sent via personal delivery or overnight courier or via email with confirmation of receipt, to Maker or Holder at the addresses set forth in the first paragraph of this Note, or such other address to be designated in writing by Maker or Holder.

### 10. Jury Trial Waiver

Maker and Holder each hereby knowingly and voluntarily waive trial by jury and the right thereto in any action or proceeding of any kind, arising under or out of, or otherwise related to or connected with this Note.

### 11. Governing Law

This Note shall be governed by, interpreted under and construed and enforced in accordance with the laws of the Commonwealth of Virginia.

### 12. Complete and Voluntary Agreement

This Note constitutes the entire understanding of the parties on the subjects covered. Maker expressly acknowledges and warrants that he/she has read and fully understands the terms of this Note; that Maker has had the opportunity to seek legal counsel of his/her own choosing and to have the terms of this Note fully explained to him/her; that Holder has advised Maker to consult with an attorney prior to signing this Note; that Maker is not executing this Note in reliance on any promises, representations or inducements other than those contained herein; and that Maker is executing this Note voluntarily, free of any duress or coercion.

### 13. Miscellaneous

(a) To the extent a calculation must be made to determine the amount of any unpaid Principal Amount, payments made theretofore shall be deemed payments of interest first and payment of principal thereafter.

(b) Maker shall, upon Holder's written request, promptly make, execute and deliver to Holder any and all further documents or instruments Holder may consider necessary or desirable in order to effectuate, complete or perfect Maker's obligations under this Note.

(c) If any provision of this Note is held to be unenforceable for any reason, such provision shall be adjusted rather than voided, if possible, in order to achieve the intent of Maker and Holder to the fullest extent possible. In any event, all other provisions of this Note shall be deemed valid and enforceable to the fullest extent possible.

### 14. Personal Guarantee

Bin Hao ("Guarantor") hereby personally guarantees payment of the above Promissory Note dated on August 15, 2018, between Wei Song ("Holder") and Qidian LLC ("Maker"). Guarantor agrees that the Holder may proceed against Guarantor directly and independently of the borrower.

*[Signature Pages Follow]*

3

IN WITNESS WHEREOF, Maker has signed this Note as of the Funding Date first set forth above.

Maker:
QIDIAN
LLC

By: _____

Name: Bin Hao.

Title: President & CEO

COMMONWEALTH OF VIRGINIA

[CITY] [COUNTY] OF Fairfax , to wit:

The following instrument was acknowledged before me by Bin Hao, on this ____ day of
August 2018

_____
Notary Public

My commission expires: _____
Notary Registration No.: _____

ANA E. BARILLAS MENDOZA
NOTARY PUBLIC
REG. # 7666486
COMMONWEALTH OF VIRGINA
MY COMMISION EXPIRES MARCH 31 2020

ANA E. BARILLAS MENDOZA
NOTARY PUBLIC
REG. # 7666486
COMMONWEALTH OF VIRGINA
MY COMMISION EXPIRES MARCH 31 2020·

4

Exhibit B

## BILL OF SALE

BE IT KNOWN TO ALL BY THESE PRESENTS that Wei Song, an individual, ("Seller"), pursuant to that certain Membership Interest Redemption Agreement between Seller and Qidian, LLC, a Virginia Limited Liability Company ("Qidian"), dated August 15, 2018 (the "Agreement"), and for good and valuable consideration, the receipt, adequacy, and legal sufficiency of which is hereby acknowledged, does hereby sell, transfer, assign and deliver to Buyer, its successors and assigns, to have and to hold forever, all of Seller's right, title and interest in and to the membership interest of Buyer to Qidian, in the manner and to the extent provided in the Agreement. Unless otherwise defined in this Bill of Sale, capitalized terms used in this Bill of Sale shall have the respective meanings ascribed to such terms in the Agreement.

Neither the making nor the acceptance of this Bill of Sale shall restrict, impair, reduce, expand or otherwise modify the terms of the Agreement or constitute a waiver or release by Seller or Buyer of any liabilities, duties or obligations imposed upon any of them by the terms of the Agreement including, without limitation, the representations and warranties and other provisions thereof. The covenants, representations and warranties of Seller and Buyer set forth in the Agreement will be incorporated in and survive the execution and delivery of this Bill of Sale.

This Bill of Sale is binding on Seller, and its successors and assigns, and will inure to the benefit of Buyer, its successors and assigns, and shall be construed and enforced in accordance with the laws of the Commonwealth of Virginia without regard to the conflict or choice of law rules of Virginia or any other jurisdiction.

Subject to the terms and conditions set forth in the Agreement, Seller will use all reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary and proper and advisable to consummate and make effective the transactions contemplated by this Bill of Sale.

This Bill of Sale cannot be amended without a writing signed by each of Buyer and Seller.

IN WITNESS WHEREOF, Seller has executed this Bill of Sale on August 15, 2018.

WEI SONG
an individual

Exhibit A

## PROMISSORY NOTE

$400,000.00                                                            August 15, 2018

FOR VALUE RECEIVED, on August 15, 2018 (the "**Funding Date**"), the undersigned,
**QIDIAN LLC**, a Virginia Limited Liability Company with an address of 7925 Jones Branch Drive
Suite 4350, Tysons, VA 22102 (the "**Maker**") promises to pay to the order of Wei Song, an
individual with an address at 801 W Boxborough Dr., Wilmington, DE 19810 (the "**Holder**"), the
principal sum of up to **FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($400,000.00)**
(the "**Principal Amount**"), in lawful money of the United States, with interest thereon from and
including the date of this Note, but not including the date this Note is paid, calculated in the
manner hereinafter set forth in this **Promissory Note** (the "**Note**").

1. **Term; Initial Interest Rate**

   (a) The initial term (the "**Initial Term**") of this Note is three months (3) commencing on the
   Funding Date and expiring on November 01, 2018 (the "**Maturity Date**"). During the
   Initial Term, the interest rate on the unpaid Principal Amount shall be at a rate per annum
   of Eight Percent (8%) (the "**Initial Interest Rate**"). Upon the expiration of the Term, the
   full unpaid Principal Amount, together with all accrued interest at the Initial Interest Rate,
   shall be immediately due and payable in full.

   (b) Any unpaid Principal Amount together with the interest accrued and unpaid thereon
   computed at the **Initial Interest Rate** (or as otherwise set forth herein) shall be due and
   payable in full on the Maturity Date.

   (c) Interest due on the Loan shall be paid in arrears, calculated based on a 360-day year and
   paid for the actual number of days elapsed for any whole or partial month in which
   interest is being calculated. In computing the number of days during which interest
   accrues, the Funding Date shall be included regardless of the time of day that the
   advance of Loan funds is made, and the day on which Loan funds are repaid shall be
   included.

2. **Option for Extension Term; Extension Term Interest Rate**

   (a) Maker shall have one (1) option to extend the Initial Term of this Note for an additional
   term of Two (2) Months commencing immediately upon the expiration of the Initial
   Term, and ending exactly Two (2) Months thereafter (the "**Extension Term**"), upon
   satisfaction of the following terms and conditions:

   Maker's option for the Extension Term may only be exercised by Maker sending written
   notice to Holder no later than thirty (30) days prior to the expiration of the **Initial Term**
   of this Note, TIME BEING OF THE ESSENCE, provided, however, that no event of
   default under this Note, including, but not limited to, nonpayment of interest, shall have
   occurred and remained uncured, at the time of Maker's written notice to exercise such
   option. If Maker properly exercises the option for the **Extension Term**, the same
   covenants, agreements, terms, provisions and conditions of this Note as are contained
   herein for the **Initial Term** shall apply, except that:

         **i.** interest during the Extension Term shall be at TEN Percent (10%)

         per annum ("**Extension Interest Rate**");

         **ii.** upon the expiration of the Extension Term, the full unpaid **Principal
   Amount**, together with all accrued interest at the Extension Interest

EXHIBIT

B

Rate, shall be immediately due and payable in full; and

    ii.   if Maker and Holder agree in writing, the extension term could be extended on a month-to-month basis.

### 3. Acceleration and Events of Default

The **Holder** may accelerate the entire unpaid **Principal Amount** and all accrued interest due under this **Note**, whereupon the unpaid **Principal Amount** of this **Note** together with interest and all other amounts payable hereunder and under the **Loan Documents** shall become immediately due and payable, upon the happening of any of the following events ("**Events of Default**"):

  (a)  failure to make any payment of interest to **Holder** or any other amount due under this **Note**, or any of the **Loan Documents**, on the date when due and the continuation of such failure for five (5) days thereafter, **Holder** being under no obligation to provide notice to **Maker** thereof; or

  (b)  failure to pay the full unpaid **Principal Amount**, all accrued interest, and any other amount due under this **Note** or the **Loan Documents**, due upon the **Maturity Date**; or

  (c)  default under any of the **Loan Documents**, including, without limitation, the **Pledge** and **Security Agreement** and this **Note**.

Notwithstanding the foregoing, **Holder** shall not be required to provide notice to **Maker** of its failure to make timely payment under Section 3(a) herein above, nor shall **Holder** be required to provide notice to **Maker** of the start or expiration of the five (5) **Day** period set forth in Section 3(a) herein above. Should any **Event of Default** occur, **Holder** may, but shall not be obligated to, provide notice to **Maker**, of such **Event of Default**, and **Maker** may be provided with an opportunity to cure any such **Event of Default** only upon the absolute discretion of **Holder**. Upon the occurrence of an **Event of Default**, the interest rate upon the unpaid **Principal Amount** shall automatically become **Sixteen Percent (16%)** per annum ("**Default Interest Rate**"), and shall continue at the **Default Interest Rate** until full payment is made of the unpaid **Principal Amount** and all accrued interest.

### 4. No Prepayment Penalty

**Maker** shall have the right to prepay this **Note** in full or in part at any time without the imposition of any prepayment fee or penalty.

### 5. Legal Rate of Interest

Nothing herein contained shall be construed or so operate as to require payment of interest at a rate greater than the highest permitted rate under applicable law, or to make any payment or to do any act contrary to applicable law. To this end, if during the course of any litigation involving the enforceability of the obligations under this **Note**, a court having jurisdiction of the subject matter or of the parties to said litigation shall determine that either the interest rate as set forth herein, or the effect of said rate in relation to the particular circumstances of default resulting in said litigation, are separately or collectively usurious, then the interest rate set forth herein shall be reduced, or the operation and effect thereof ameliorated, to achieve the highest interest rate or charge which shall not be usurious.

### 6. Attorney's Fees.

In the event that any suit or action is instituted under or in relation to this **Note**, including without limitation to enforce any provision in this **Note**, the prevailing party in such dispute shall be entitled to recover from the losing party all fees, costs and expenses of enforcing any right of such prevailing party under or with respect to this **Note**, including without limitation, such reasonable fees and expenses of attorneys and accountants, which shall include, without limitation, all fees, costs and expenses of appeals.

### 7. Binding Nature; Assignment

This Note shall bind the **Maker** and its principals, receivers, administrators, successors and assigns, and shall inure to the benefit of the **Holder** and principals, receivers, administrators, successors and assigns. This Note and the obligations hereunder may not be assigned by the **Maker** without the prior written consent of the **Holder**. This Note and the entitlements hereunder may be assigned by the **Holder** without the consent of the **Maker**.

### 8. Waivers by Maker

**Maker** hereby waives demand, presentment for payment, notice of protest, and notice of dishonor or nonpayment of this **Note**.

### 9. Notice

Any claim, notice, request, instruction or demand required to be given or elected to be given, in connection with this Note shall be in writing and sent via personal delivery or overnight courier or via email with confirmation of receipt, to **Maker** or **Holder** at the addresses set forth in the first paragraph of this **Note**, or such other address to be designated in writing by **Maker** or **Holder**.

### 10. Jury Trial Waiver

**Maker** and **Holder** each hereby knowingly and voluntarily waive trial by jury and the right thereto in any action or proceeding of any kind, arising under or out of, or otherwise related to or connected with this Note.

### 11. Governing Law

This Note shall be governed by, interpreted under and construed and enforced in accordance with the laws of the Commonwealth of Virginia.

### 12. Complete and Voluntary Agreement

This Note constitutes the entire understanding of the parties on the subjects covered. **Maker** expressly acknowledges and warrants that he/she has read and fully understands the terms of this **Note**; that **Maker** has had the opportunity to seek legal counsel of his/her own choosing and to have the terms of this **Note** fully explained to him/her; that **Holder** has advised **Maker** to consult with an attorney prior to signing this **Note**; that **Maker** is not executing this **Note** in reliance on any promises, representations or inducements other than those contained herein; and that **Maker** is executing this **Note** voluntarily, free of any duress or coercion.

### 13. Miscellaneous

    (a) To the extent a calculation must be made to determine the amount of any unpaid Principal Amount, payments made theretofore shall be deemed payments of interest first and payment of principal thereafter.

    (b) **Maker** shall, upon **Holder's** written request, promptly make, execute and deliver to **Holder** any and all further documents or instruments **Holder** may consider necessary or desirable in order to effectuate, complete or perfect **Maker's** obligations under this **Note**.

    (c) If any provision of this Note is held to be unenforceable for any reason, such provision shall be adjusted rather than voided, if possible, in order to achieve the intent of **Maker** and **Holder** to the fullest extent possible. In any event, all other provisions of this Note shall be deemed valid and enforceable to the fullest extent possible.

### 14. Personal Guarantee

Bin Hao (**"Guarantor"**) hereby personally guarantees payment of the above **Promissory Note** dated on August 15, 2018, between Wei Song (**"Holder"**) and Qidian LLC (**"Maker"**). Guarantor agrees that the **Holder** may proceed against Guarantor directly and independently of the borrower.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, Maker has signed this Note as of the Funding Date first set forth above.

Maker:
QIDIAN
LLC

By: _____

Name: Bin Hao

Title: President & CEO

COMMONWEALTH OF VIRGINIA

[CITY] [COUNTY] OF Fairfax , to wit:

The following instrument was acknowledged before me by Bin Hao, on this 16th day of August 2018.

_____
Notary Public

My commission expires: March 31, 2020
Notary Registration No.: 7666486

ANA E. BARILLAS MENDOZA
NOTARY PUBLIC
REG. # 7666486
COMMONWEALTH OF VIRGINA
MY COMMISION EXPIRES MARCH 31 2020

ANA E. BARILLAS MENDOZA
NOTARY PUBLIC
REG. # 7666486
COMMONWEALTH OF VIRGINA
MY COMMISION EXPIRES MARCH 31 2020

4

V I R G I N I A :

IN THE CIRCUIT COURT OF FAIRFAX COUNTY

|  |  |  |
|---|---|---|
| WEI SONG | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. CL21-4375 |
| BIN HAO, et al. | ) | |
| Defendants. | ) | |

## SUGGESTION OF BANKRUPTCY

    Will the Clerk of the Court please take note that Bin Hao has filed a Voluntary Petition

for Relief with the Clerk of the United States Bankruptcy Court, Eastern District of Virginia,

Alexandria Division.  The docket number for this proceeding is 22-10478.

<div style="margin-left:50%">

Respectfully submitted,
BIN HAO
By Counsel

_____
James T. Bacon (VSB# 22146)
Mahdavi, Bacon, Halfhill & Young, PLLC
11350 Random Hills Rd., Suite 700
Fairfax, VA 22030
703-352-1300
703-352-1301 (fax)
jbacon@mbhylaw.com
*Counsel for Bin Hao*

</div>

## CERTIFICATE OF SERVICE

I certify that on this 20th day of April, 2022, I mailed, first class postage prepaid, a true copy of this SUGGESTION OF BANKRUPTCY to:

William J. Bethune, VSB No. 21427
Bethany R. Benes, VSB No. 85408
BETHUNE BENES, PLLC
4290 Chain Bridge Rd., Suite 302
Fairfax, VA 22030
Tel: 703-260-9322
wbethune@bethunebenes.com
bbenes@bethunebenes.com
*Counsel for Wei Song a/k/a Vivian Song*

_____
James T. Bacon